## PRESTON *v.* FITCH *et al.*

(*Supreme Court, General Term, Third Department.* July 2, 1892.)

1. FORECLOSURE OF MORTGAGE—TENANCY IN COMMON—DISSOLUTION OF PARTNERSHIP.
   S. and W., partners, brought an action to foreclose a second mortgage on real estate executed to secure to them a debt of $25,000. Pending the action, S. and W. dissolved partnership, but agreed "to hold as tenants in common" the debt in question. *Held*, that the partnership ceased as to the debt, and that S. having died pending the action, his personal representative should have been made a party thereto.

2. SAME—DISBURSEMENTS BY SURVIVING TENANT IN COMMON.
   After the death of S., W. made large disbursements in defraying the expenses of the action in question, and in paying interest on the first mortgage on the property. *Held*, that W. or his assignee was not entitled to recover such disbursements from the personal representative of S.

3. RES ADJUDICATA—ESTOPPEL.
   The fact that the foreclosure action was carried on by W. after the death of S., as surviving partner, and that he was therein adjudged to be such, did not estop the executors of S., who were not parties to that action, from asserting that the copartnership between S. and W. ceased before the death of S.

Appeal from special term, Ulster county.

Action by Charles M. Preston, as assignee of William B. Fitch, against Reed Fitch, as sole surviving executor of the last will of Simeon Fitch, deceased, and others, to recover such amount as shall be found due him as surviving partner of the firm of Simeon & William B. Fitch, for expenses incurred and moneys advanced by his assignor and himself in protecting the interest of the late firm of S. & William B. Fitch in a claim or demand described in an agreement made by Simeon and William B. Fitch, dated the 25th day of August, 1877, as the Ezra Fitch debt. From a judgment for defendants, plaintiff appeals. Affirmed.

The opinion of MAYHAM, J., at special term, was as follows:

"The proof shows that for a long time prior to August 25, 1877, Simeon Fitch and William B. Fitch were copartners doing business at the cities of New York and Kingston, under the firm name of S. & W. B. Fitch, and that for some time prior to and on the 26th day of May, 1859, Margaret Fitch was the owner of a valuable farm situate in the town of Coxsackie, Greene county, New York, which on that day she, together with her husband, Ezra Fitch, mortgaged to the Mutual Life Insurance Company of New York, to secure a loan of $10,000, which mortgage was duly recorded. On the 25th of August, 1874, Margaret Fitch sold and conveyed her Coxsackie farm by deed to William J. Best, subject to the insurance company mortgage, which Best assumed in such deed and agreed to pay; and to secure the balance of the purchase price of the farm, Best gave to the said Margaret Fitch two bonds, one for $15,000, and one for $40,000, both of which were secured by a mortgage on the farm conveyed to him. Prior to August 25, 1874, Margaret Fitch became indebted to the firm of S. & W. B. Fitch in the sum of about $25,000 for money loaned to her, and on that day, in payment of a portion of such indebtedness, she assigned to said firm the $15,000 bond and mortgage given to her by Best, and covenanted in such assignment that it should be a first lien on the farm next after the mortgage to the Mutual Life Insurance Company, and, to secure the balance of her indebtedness to S. & W. B. Fitch, at the same time assigned the $40,000 bond and mortgage to said firm, which balance at that time amounted to over the sum of $10,000. Default having been made in the payment of the interest on these mortgages given by Best on the purchase of the farm, which had been assigned to the firm of S. & W. B. Fitch, on the 24th of May, 1877, an action was commenced on behalf of the firm by King and Hallock, as attorneys, against William J. Best, Margaret Best, his wife, Margaret Fitch, and Adam Martin for the foreclosure of the same. To this action the defendants William J. Best, and Margaret Best interposed an an-

swer, alleging various defenses and counterclaims, to which plaintiff's counsel in that action replied.  After the commencement of that action, and while the same was pending and undetermined, on the 25th day of August, 1877, Simeon Fitch and William B. Fitch executed a writing under seal, in which they recited the existence of a copartnership theretofore and then existing between them, and that they own and possess various chattels, and have claims, demands, debts, and judgments which belong to them as partners.  The agreement then states that the parties 'hereby mutually agree to discontinue said copartnership existing between them as aforesaid from the time of the execution of these presents.'  The agreement then contains the following clause: 'And the said parties hereto of the first and second parts hereby mutually agree to continue to hold, as tenants in common, the debt, claim, or demand, amounting to about the sum of twenty-five thousand dollars, ($25,000,) known as the "Ezra Fitch Debt," secured by mortgage and liens on lands known as the "Ezra Fitch Property," at Coxsackie, Greene county, N. Y., each of the parties hereto to have and own an undivided one-half interest therein.'  This agreement also transferred and conveyed to William B. Fitch all other bonds, mortgages, judgments, debts, accounts, stock-in trade, tools, and chattels, partnership property, to William B. Fitch, who in said agreement assumed and agreed to pay 'all liabilities, indebtedness, and obligations under which said copartnership rests, or owing by them.'  On the 13th day of July, 1877, Simeon Fitch made his last will and testament, and on the 3d day of September following died.  On the 2d of October, 1877, this will was duly proved and admitted to probate.  The executors named in said will were Jane M. Fitch, Reed Fitch, William B. Fitch, and Elihu Church, none of whom qualified except Reed Fitch and Elihu Church.

"The will made certain specific bequests to Jane M. Fitch, widow, and devised and bequeathed all the rest of his property to his executors and the survivors of them, after the death of Simeon Fitch.  The action commenced in the name of Simeon Fitch and William B. Fitch to foreclose the Best mortgage was continued in the name of William B. Fitch as survivor of Simeon Fitch and William B. Fitch, and such proceedings were therein had that the issues therein were referred to Peter Cantine to hear and determine, who thereafter, and on the 4th day of February, 1880, made his report, wherein, among other things, he finds as follows: 'That the said bond and mortgage for $30,000 is owned by the said William B. Fitch, as survivor of the said Simeon Fitch and William B. Fitch, and that he is entitled to collect thereon the full amount of money secured to be paid thereby.'  On the report, judgment was entered, in which it is ordered, adjudged, and decreed that the report of the referee be, and each and every part thereof, both as to the facts found and the conclusions of law therein contained, are, fully approved, ratified, and confirmed.  On this judgment appeals were taken to the general term of the supreme court and court of appeals, (94 N. Y. 637, mem.,) and affirmed in both of said courts.  Under the judgment of foreclosure and sale thus obtained the premises covered by the mortgage were on the 7th day of February, 1884, duly sold by the referee appointed in such foreclosure action to sell, and were purchased on such sale by William B. Fitch, for $10,900, subject to the prior mortgage held by the Mutual Life Insurance Company, and the referee's deed on such sale was given him.  That after the dissolution of said copartnership, as above set forth, the said William B. Fitch paid out and advanced large sums of money in defraying the expense of the litigation on such foreclosure sale, and in paying interest on that prior mortgage to the insurance company. William B. Fitch, after such sale and conveyance to him, continued to hold said premises under his purchase until the 15th day of November, 1884, when he executed to this plaintiff a general assignment for the benefit of his creditors.  On the 18th day of November, 1885, the Mutual Life Insurance Company commenced an action in the supreme court for the foreclosure of its

mortgage against such premises, on which a judgment of foreclosure and sale was recovered; and pursuant to such judgment, on the 26th day of March, 1886, the mortgaged premises were sold under the direction of a referee appointed to sell, on which sale the premises were struck off to this plaintiff for $12,500. On the —————— day of June, 1887, the plaintiff, as assignee, commenced this action.

"The first question pressed upon the consideration of the court in the determination of this action is as to whether plaintiff's assignor incurred the expense and made the disbursements to recover one half of which this action is brought, or as to which an accounting is demanded, as the surviving partner of the late firm of S. & W. B. Fitch, or as a tenant in common, holding an undivided one-half interest in the Ezra Fitch debt, so called, under the contract of August 25, 1877, between Simeon Fitch and William B. Fitch. Two constructions are sought to be put upon that contract by the respective parties. On the part of the plaintiff it is insisted that the parties by that contract dissolved the partnership theretofore existing between them as to all matters except the Ezra Fitch debt, and as to that the copartnership continued and was not dissolved up to the time of the death of Simeon Fitch, and that William B. Fitch, on the happening of that event, succeeded to that claim as the surviving partner of Simeon and William B. Fitch; and in support of that contention it is urged that the language employed by the parties in the instrument itself justifies the construction that, as equal partners before the dissolution, the parties had an equal interest in this debt, and that that equality of interest was in terms preserved in and by the contract; that, as they had up to that time held the debt as copartners, the words 'continue to hold' imply a holding upon the same terms and conditions then existing, and, although these words are followed in the same sentence by the words 'as tenants in common,' these latter words should not be given their technical signification, but should be construed so as to give effect to the preceding words 'to continue to hold;' and hence that the contract should be so construed that the words 'tenants in common' should in this agreement be held to signify 'copartners.' The plaintiff also insists that this view is also strengthened by the fact that, at the time of making this agreement, an action was pending in the name of these parties as copartners, and no reference to that action is made in the agreement, and no suggestion made therein to change the form of the action to conform to any changed relation of the parties, and that, when that action was prosecuted to judgment, it was adjudged that plaintiff's assignor held and owned the bond and mortgage representing the Ezra Fitch debt as survivor of the firm of S. & W. B. Fitch. On the part of the defendants it is insisted that the dissolution of the firm was complete as to all its assets and effects by the terms of the agreement of August 25, 1877, and that as to the Ezra Fitch debt the parties by that agreement became tenants in common, and that that relation existed at the time of the death of Simeon Fitch, and that William B. Fitch took no interest in it as survivor of the late firm of S. & William B. Fitch.

"Standing upon this instant alone, it must be conceded that the relation which William B. Fitch bore to Simeon Fitch's interest in this debt after dissolution would be involved in grave doubt. But I think as between these parties, for the purpose of this action, that doubt is removed by the judgment and determination of this court in the action to foreclose the Best mortgage; and that as to the representative of William B. Fitch, and parties claiming under Simeon Fitch, both of whom were parties to that action, the determination in that action is *res adjudicata.* At the time of taking judgment in that action, William B. Fitch stood as the survivor of the late firm of Simeon Fitch and William B. Fitch in an action commenced by them as partners, and prosecuted by them as such up to the time of the death of Simeon Fitch. William B. Fitch's right to recover in that action as survivor depended upon

the existence of the relation of copartnership between him and Simeon at the time of Simeon's death. No step having been taken by the next of kin or personal representatives of Simeon after his death, or by him during his life, after the making of the agreement of August 27, 1877, to establish in that action a severance of the relation of copartnership existing at the time of the commencement of the action, and the same having been prosecuted to judgment in the name of the survivor, and the decree adjudging him to be such survivor, and as owning this claim as such, I think it does not lie with the privies in estate of Simeon to deny the existence of that relation. The rule seems well settled that, when a question must necessarily have been determined in order to reach the result announced, that determination is conclusive between and as to all the parties to the action and their privies, either as an estoppel or in bar; and such an estoppel is effective, although the judgment was in a court of equity, and the parties in the action were both defendants. *Tuska* v. *O'Brien*, 68 N. Y. 449, 450. I must assume that the action commenced in the name of Simeon and William B. Fitch to foreclose the Best mortgage was with the authority of both, as members of the firm of S. & W. B. Fitch, (*Denton* v. *Noyes*, 6 Johns. 295;) and the verity of the judgment recovered in such an action cannot be questioned collaterally in another action, between the same parties or their privies. *Brown* v. *Nichols*, 42 N. Y. 26; *Hamilton* v. *Wright*, 37 N. Y. 502. If Simeon and William B. Fitch were partners at the time of the death of Simeon, then the action commenced by the firm in the lifetime of both vested in the survivor, and was properly prosecuted to judgment by him. Code Civil Proc. § 758.

"This brings us to the consideration of the powers and rights of a surviving partner to charge the estate of his deceased copartner in the management of the partnership assets after dissolution by the death of a copartner. By the death of a copartner, the partnership is *ipso facto* dissolved, and all the powers of the surviving partner to bind the partnership in the transaction of the ordinary partnership business is ended. But the law imposes upon the surviving partner, as an incident of his contract of partnership, the duty of collecting the assets and winding up the business of the firm. *Ames* v. *Downing*, 1 Bradf. Sur. 321. And, when there is no allegation of the insolvency of the survivor, he will be permitted to exercise his judgment and discretion, and the court will not appoint a receiver at the instance of the representatives of the deceased partner. *Evans* v. *Evans*, 9 Paige, 178. William B. Fitch, therefore, as the survivor of the firm of S. & W. B. Fitch, was clearly charged with the duty of prosecuting the suit for the foreclosure of the Best mortgage, which was pending at the death of Simeon, and in the prosecution of that suit the expense which he necessarily and properly incurred would be a charge on the partnership assets, and in default of such assets it would seem to be equitable and just that the estate of his deceased copartner should be held liable to contribute its just proportion of the same, unless by the terms of the dissolution contract William B. Fitch assumed this liability as one of the firm liabilities which he covenanted to pay. The language used in the agreement is as follows: 'The said William B. Fitch, party of the second part, for himself, his heirs, his executors, and administrators, doth hereby covenant and agree, to and with Simeon Fitch, his heirs, executors, and administrators, that the said party of the second part will pay, satisfy, and discharge all liabilities, indebtedness, or obligations of the aforesaid copartnership, and will hold the said party of the first part harmless and free from any liability on account thereof, as one of the members of the copartnership of S. & William B. Fitch.' As we have held that this Ezra Fitch debt was excepted from the effect of the dissolution of the partnership, and was still held in partnership by the firm, it would seem to follow that any expense incurred in relation to it would fall within the assumed liability of William B. Fitch under the above provisions of the agreement, in which he

agrees to protect the estate of Simeon Fitch from all liability. That being so, he, in paying these expenses, was only performing his own contract, and cannot now be permitted to charge upon the estate of Simeon Fitch a liability against which he expressly covenanted to protect it. The payment of these expenses, incurred in the prosecution of the action in the name of the firm by the survivor, would have devolved on the firm had there been no dissolution, as the dissolution by the contract did not reach the Ezra Fitch debt; that still remained a partnership matter; and as William B. Fitch assumed all partnership liabilities, and agreed to indemnify Simeon and his successors in interest from all liability on account of the copartnership, this became one of the liabilities assumed by him. If this view of the case be correct, it follows that the plaintiff cannot recover in this action.

"The remaining question is, are the defendants entitled to recover on their counterclaim for rents? I think not. The lease to plaintiff of the dock was for one year only, and although it was dated March 19, 1885, it was intended to, and did, cover a period of time from December 1, 1884, to December 1, 1885, and the plaintiff covenanted to pay, and did pay, the tax assessed within that period. The tax paid by plaintiff was that which was levied December 6, 1884, during the term for which his lease was intended to operate. And the tax levied December 6, 1885, and which was paid by his successor, and now sought-to be recovered of him, is in no just sense a tax assumed or agreed to be paid by him. On the whole case the defendants are entitled to judgment dismissing the complaint, with costs to be paid out of the assigned estate."

Argued before PUTNAM and HERRICK, JJ.

*Howard Chipp, Jr.,* for appellant.   *A. T. Clearwater,* for respondents.

PUTNAM, J. The exhaustive opinion delivered at special term renders it unnecessary for me to do more than make a few suggestions in regard to this case. I concur in the result reached by the court below, but with some doubts as to the finding that the partnership between William B. and Simeon Fitch continued as to the Ezra Fitch debt after the execution of the agreement of August 25, 1877, although in all other respects dissolved. That agreement provided that the parties "mutually agree to discontinue said copartnership existing between them as aforesaid from the day of the execution of these presents, and the said parties  *  *  *  agree to continue to hold as tenants in common the debt, claim, or demand, amounting to about the sum of twenty-five thousand dollars, known as the 'Ezra Fitch Debt;'  *  *  *  each of the parties hereto to have and own an undivided one-half interest therein." I incline to the opinion that the language of this agreement between the parties should be taken literally. The agreement does not provide that the partnership shall be dissolved as to a portion of the assets of the firm, and continue as to the residue. It seems an unlimited and entire dissolution of the firm. It provides that the Ezra Fitch debt shall thereafter be owned by the parties as tenants in common. There is a plain distinction between owning personal property as tenant in common or as partner. If it had been the intent to continue the copartnership as to the debt in question, it would have been quite easy to have inserted in the agreement in the clause dissolving the partnership the words, "except as to the Ezra Fitch debt," or that the parties should continue to own this debt as partners. I am inclined to think, therefore, that by the terms of the contract of August 25, 1877, the copartnership between the parties ceased as to this Ezra Fitch debt, as well as to all other partnership property. Hence, on the death of Simeon Fitch, which occurred a few days after and before the disbursements, for which this action was brought, were made, the title to an undivided one half of the Ezra Fitch claim vested in the personal representatives of Simeon. They should have been made parties plaintiff in the Best action. *Cock* v. *Keneda,* 29 Barb. 121.

The representatives of Simeon Fitch and William B. Fitch being tenants in common as to the Ezra Fitch debt, plaintiff or his assignor could not charge defendants for expenses and disbursements of the action and other expenses set out in the complaint, incurred without the knowledge, consent, privity, or procurement of defendants. If while Simeon lived there was any presumed agency on the part of William B. to continue the action, and make the expenditures mentioned in the complaint, Simeon having died, such presumed agency was terminated by his death. In the cases cited by the appellant I find no authority holding that a tenant in common can enforce contribution for such disbursements as were made by William B. Fitch, and for which plaintiff claims here; they being made without the knowledge, request, or privity of the cotenant. I also think the judgment rendered in the action to foreclose the Best mortgage does not estop the defendants from asserting that the copartnership between William B. and Simeon Fitch as to the Ezra Fitch debt ceased before the death of Simeon. It is true that the action was carried on by William B. Fitch as survivor, and it was determined in such action that he was the survivor. But the defendants were not parties, and hence are not bound by the judgment. If in fact the partnership ended on the execution of the agreement, August 25, 1877, as above suggested, the defendants cannot in any way be bound by the proceedings in the action after the death of Simeon Fitch. They could only be made liable by the result of the action of parties to it. Of course, if the partnership in fact continued as to the Ezra Fitch claim, William B., as survivor, could continue the action, and the judgment therein would be *res adjudicata.* But if my impression, as above stated, is correct, I am unable to see how a judgment in an action in which they never had an opportunity to appear could be binding on defendants. For these reasons, and without considering those advanced at special term, I think there should be an affirmance of the judgment, with costs.

HERRICK, J. One of the members of the court being disqualified, I concur in the result of the opinion of Justice PUTNAM, in order that there may be a decision of the case, which there would not be if I failed to assent.